IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HARRY E. MAXEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 14−cv−1263−JPG−SCW |
| | ) |
| **WARDEN JAMES CROSS,** | ) |
| | ) |
| **Defendants.** | ) |

## REPORT & RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This Report and Recommendation is submitted to United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). This matter was referred to the undersigned for further pre-trial proceedings, including the resolution of Plaintiff's request for a preliminary injunction. (Doc. 1). Having held a hearing on Plaintiff's preliminary injunction on December 23, 2014, it is **RECOMMENDED** that Plaintiff's Motion for a Preliminary Injunction be **DENIED** Defendant's request that the case be dismissed for failure to exhaust administrative remedies be **GRANTED,** and the case **DISMISSED without prejudice**.

### BACKGROUND

Plaintiff Harry Maxey filed his *pro-se* Complaint on November 7, 2014 while he was incarcerated at Federal Correctional Institution (FCI) Greenville. (Doc 1). The Court found that Plaintiff stated a claim for injunctive relief against Warden Cross based on Plaintiff's allegations that he had been given a defective seat cushion and wheel chair. (Doc. 4). On December 19, 2014, Defendants filed a Response to Plaintiff's Motion for Preliminary Injunction. (Doc. 15). In their Response, they alleged that Plaintiff had failed to exhaust his administrative remedies prior to filing suit, and requested that the suit be dismissed. (Doc. 15). The undersigned held a hearing on the

1

matter on December 23, 2014, and considered both the exhaustion issue and Plaintiff's request for injunctive relief.

Specifically, Plaintiff alleges that he is a 65 year old male who suffers from poliomyelties. (Doc. 1, p. 2). Plaintiff was transferred to FCI Greenville from FCI Marion on December 26, 2013. (Doc. 1, p. 2). At his initial doctor visit, Plaintiff told staff that he had right leg and hip pain and also suffered from pressure sores because his wheelchair did not have a proper cushion. (Doc. 1, p. 3). The health care unit provided a foam gel cushion on May 24, 2014. (Doc. 1, p. 3).

Plaintiff was offered a new wheel chair in June of 2014, but declined to take it in favor of his old one. (Doc. 1, p. 3). The next month, his chair broke a wheel bearing. (Doc. 1, p. 4). The health care unit repaired the chair and returned it to Plaintiff, but not before it was loaned to another inmate. (Doc. 1, p. 4). Plaintiff alleges the chair now has bent wheels and that he fears further injury should it fall apart. (Doc. 1, p. 4).

On August 30, 2014, Plaintiff's foam gel insert cushion started leaking. (Doc. 1, p. 4). He returned the cushion to medical staff. (Doc. 1, p. 4). When the cushion was returned to Plaintiff, it no longer had the foam gel in it. (Doc. 1, p. 4). Medical staff determined that the cushion was adequate to meet Plaintiff's needs and declined to replace it or the foam insert. (Doc. 1, p. 4). Plaintiff stated that he thought he was more prone to pressure sores without the foam gel insert, but conceded at the hearing that he had not suffered pressure sores while at FCI Greenville. Plaintiff also testified that he was using the same wheelchair he had been using at Marion, and that he was currently stuffing blankets into the space left by the gel pack to address his pain.

Plaintiff submitted a request for Administrative Review on September 30, 2014. (Doc. 15-2, p. 1). He received a response on October 15, 2014, denying his request for a new cushion and a new wheelchair. (Doc. 15-2, p. 2). Plaintiff appealed that decision on November 7, 2014. (Doc. 15-2, p. 3). He received a response to that appeal, again denying his request, on November 21, 2014. (Doc.

15-2, p. 5). The response clearly stated that Plaintiff could appeal again to the Office of General Counsel for the Federal Bureau of Prisons within 30 days. (Doc. 15-2, p. 5). Plaintiff testified at the hearing that while he had filed an appeal, it was still pending and he had not received a response yet.

## ANALYSIS

1. **Summary Judgment Standard**

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).** The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).**

A Motion for Summary Judgment filed pursuant to *Pavey* typically requires a hearing to determine any contested issues regarding exhaustion and a judge may make limited findings of fact at that time. **Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested issue of exhaustion is resolved. **Pavey, 544 F.3d at 742.** In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. **Pavey, 544 F.3d at 740-41.** A hearing will not be required where "there are no disputed facts regarding exhaustion, only a legal question." **Doss v. Gilkey, 649 F.Supp.2d 905, 912 (S.D.Ill. 2009).**

2. **PLRA's Exhaustion Requirement**

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, *by a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted. **42 U.S.C. § 1997e(a) (emphasis added).**[1] Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742.** When — as here — purely legal issues (and undisputed facts) control the administrative remedies issue, no hearing is needed. **Doss v. Gilkey, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).**

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. **Ford v. Johnson, 362**

---

[1] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA. **Witzke v. Femal, 376 F.3d 744, 751 (7th Cir. 2004) (citing Wilson v. Weiter, 501 U.S. 294, 299 n. 1 (1991) ("if an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement")).**

4

**F.3d 395, 397 (7th Cir. 2004);** *Pozo v. McCaughtry*, **286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).** When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. *Id.* If prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. *Maddox v. Love*, **655 F.3d 709, 722 (7th Cir. 2011).**

Exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Rather, a prisoner must wait bring a suit until he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a))**. A suit that is filed prior to the exhaustion of remedies must be dismissed, even if a plaintiff's administrative remedies become exhausted during the pendency of the suit. *Id.*

An emergency does not exempt an inmate from exhausting his administrative remedies. However, the Seventh Circuit has recognized that under very limited circumstances, an inmate's need for a remedy may be so dire that an administrative process could not sufficiently address the need in a timely matter, thus making the process unavailable. *Fletcher v. Menard Correctional Center*, **623 F.3d 1171, 1173 (7th Cir. 2010)**.

    **3. BOP Administrative Remedy Procedures**

The Federal Bureau of Prisons permits inmates to address issues with their conditions of confinement through an administrative remedy procedure. **28 C.F.R. § 542.10**. Administrative Officers have the responsibility of creating policies and procedures to address Administrative Remedy Requests. **28 C.F.R. § 542.11**. As part of this responsibility, they must provide inmates with receipts for their requests, conduct investigations, and respond to and sign all Remedy

5

Requests. **28 C.F.R. § 542.11**. Inmates are encouraged to attempt to resolve their grievances informally by using a BP-8 or BP-8 ½ form. **28 C.F.R. § 542.13**. Should that process fail, the inmate has twenty (20) days from the date of the incident to file a formal complaint (BP-9) with the Warden. **28 C.F.R. § 542.14**. The Warden must respond in twenty (20) days. **28 C.F.R. § 542.18**. The inmate may then use a BP-10 form to file an appeal with the Regional Office if she is unsatisfied with the Warden's response. **28 C.F.R. § 542.15**. The Regional Office will respond within thirty (30) days. **28 C.F.R. § 542.18**. Finally, should the issue remain unresolved, the inmate may file one last appeal (BP-11) to the General Counsel, which must be responded to within forty (40) days. **28 C.F.R. §§ 542.15, 542.18**. Each phase of this process has an appropriate form, which the inmate shall obtain from the institution staff, which is usually their correctional counselor. **28 C.F.R. § 542.14(c)(1).**

Here, Defendants have submitted evidence that Plaintiff has not completed the administrative grievance process. Plaintiff conceded that he was still awaiting a response, but argued that the process takes more than a year. There is no evidence in the record for Plaintiff's assertion. The Code states that Plaintiff shall receive a response within 40 days, and that 40 day period had not yet lapsed at the time of the hearing. In fact, the evidence shows that Plaintiff filed suit on November 7, 2014, two weeks before he received a response to his BP-10. Because Plaintiff conceded that he had filed, but not yet received a response on his BP-11 at the time of the hearing, the undersigned finds that Plaintiff did not exhaust his administrative remedies prior to filing suit.

Nor was the situation such an emergency as to fall within the narrow exception carved out by *Fletcher*. The Court there stated that for the exemption to apply, the prisoner must be placed in imminent danger of serious physical injury and the available administrative remedies will not afford him the relief he seeks before the injury will occur. ***Fletcher*, 623 F.3d at 1173**. Plaintiff testified that he has the same wheelchair now that he had at Marion. He also testified that he had no cushion

6

at all at Marion and that he relied on blankets to serve the same function. He conceded that stuffing his cushion with blankets is the equivalent to the blanket system he used at Marion. Therefore, the Court does not find that Plaintiff is in imminent danger of serious physical injury and that he does not fall within the very limited exception to the exhaustion requirement identified by *Fletcher*.

The PLRA takes a strict compliance approach to exhaustion, and because Plaintiff had not exhausted his remedies here at the time he filed suit, his case must be dismissed pursuant to *Perez*.[2]

### CONCLUSION

It is therefore **RECOMMENDED** that Plaintiff's case be **DISMISSED without prejudice**. Should the Court accept the undersigned's recommendations, no claims would remain in this case.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Objections to this Report and Recommendation must be filed on or before January 20, 2015**.

**IT IS SO RECOMMENDED.**

Dated: <u>December 31, 2014</u>              */s/ Stephen C. Williams*
                                              **STEPHEN C. WILLIAMS**
                                              United States Magistrate Judge

---

[2] Having heard evidence on Plaintiff's wheelchair cushion, the undersigned believes that Plaintiff would not be entitled to an injunction in any case, as it appears that the cushion without the gel insert is at least equivalent to what Plaintiff had at Marion, his previous institution. However, Defendant should note that the Seventh Circuit has previously implied that leaving a prisoner's medical condition effectively untreated for costs purposes violates the Constitution. **See *Gallo v. Feinerman*, 399 Fed.Appx. 118, 119 (7th Cir. 2010) ("Feinerman's statement [to Plaintiff] that Prilosec was in the prison's formulary, and Prevacid wasn't, is no excuse for giving a prisoner a drug known to cause harm, while effectively leaving a serious medical condition untreated.")**.

7